IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | SA-17-CR-00128-DAE |
| | § | SA-19-CV-203-DAE |
| vs. | § | |
| | § | |
| (1) CHRISTOPHER ALEXANDER | § | |
| REILLY, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge David A. Ezra:**

This Report and Recommendation concerns Petitioner Christopher Alexander Reilly's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [#67]. The motion was referred to the undersigned pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties to the United States Magistrates to hold an evidentiary hearing on Reilly's claim that his trial attorney rendered ineffective assistance of counsel [#85]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Petitioner's Motion to Vacate be **DENIED**.

## I.  Background

Petitioner Christopher Alexander Reilly (hereinafter "Reilly") was indicted on February 15, 2017 on six counts for the production, transportation, receipt and possession of child pornography [#15]. Reilly hired attorney Adam Crawshaw to represent him in his case, and Crawshaw filed a Notice of Appearance with the Court on February 2, 2017 [#6]. The Court's Scheduling Order set a deadline of April 10, 2017 for the filing of all pretrial motions, including

1

any motions to suppress [#17].  Mr. Crawshaw filed a motion to suppress evidence on November 13, 2017, along with a motion seeking leave to file the motion out of time, more than seven months after the deadline to file such motions [#38, #39].  The Court denied the motion for leave and did not consider the merits of the constitutional arguments raised by the motion to suppress [#40].

Reilly pleaded guilty on November 20, 2017, and signed a plea agreement in his case [#46].  Reilly's Rule 11 plea agreement waived his right to appeal and to contest his sentence in any postconviction proceeding, except that Reilly did not waive the right to challenge his sentence on the grounds of ineffective assistance or prosecutorial misconduct "of a constitutional dimension" [#46].  Reilly was convicted on two counts of possession of child pornography on February 26, 2018 [#62].  The Presentence Report reflects an adjusted total offense level of 37 and an advisory guideline range of 210 to 262 months imprisonment [#57].  On March 16, 2018, Reilly was sentenced to 200 months in the Bureau of Prisons on each count, to run concurrently, a sentence below the advisory guideline range [#63].  The remaining counts in the indictment were dismissed by the Government pursuant to the written plea agreement.  Mr. Crawshaw did not file a direct appeal on Reilly's behalf.

Reilly, proceeding *pro se*, timely filed the motion to vacate, set aside, or correct his sentence pursuant to Section 2255 on February 28, 2019 [#67].  Reilly's Petition raises two issues:  (1) his trial attorney Adam Crawshaw was ineffective, and (2) he was subject to an illegal search and seizure in violation of the Fourth Amendment.  Reilly's ineffective-assistance claim is two-fold.  First, he argues that Mr. Crawshaw failed to instruct him of his right to pursue a direct appeal.  Second, he argues that Mr. Crawshaw's failure to file a timely motion to

suppress prevented the Court from ever considering the merits of his Fourth Amendment challenge.

After the Government filed a response in opposition [#73], the District Court referred Reilly's Petition to the undersigned for an evidentiary hearing and report and recommendation on the limited question as to whether "Mr. Crawshaw's ineffective assistance deprived [Reilly] of an appeal that he otherwise would have taken" [#85].  The District Court determined that the other issues raised in Reilly's Petition did not warrant a hearing.[1]  Following the referral, the undersigned appointed Reilly an attorney [#89], who clarified that Reilly is asking for the right to file an out-of-time appeal and to start the 14-day deadline for doing so over again.

The undersigned held a live evidentiary hearing via videoconference on September 16, 2020, at which Reilly, his postconviction counsel, and counsel for the Government appeared. Reilly, Mr. Crawshaw, and James C. ("Bo") Carrington (a friend of Reilly's) provided testimony. The Government cross-examined each of these witnesses but did not call any independent witness of its own.  After the hearing, the parties each filed proposed findings of facts and conclusions of law as directed by the Court [#118, #119].

## II.  Witness Testimony

The Court heard the following testimony at the hearing on September 16, 2020:

### A.    Petitioner Christopher Reilly

Reilly testified at the evidentiary hearing that two days prior to sentencing, Mr. Crawshaw visited with him and explained what to expect at the sentencing hearing.  According

---

[1]   The District Court subsequently expanded the scope of the evidentiary hearing to include Reilly's ineffective assistance claim related to the untimely motion to suppress [#95], but ultimately (upon the request of the Government) reversed this decision and again limited the hearing to the single issue of whether Reilly's attorney was ineffective in failing to consult with him about his right to file a direct appeal [#110].  The District Court reaffirmed this decision in a subsequent order denying Reilly's motion to reconsider [#113].

to Reilly's testimony, during that conversation, Mr. Crawshaw told him he would come back after sentencing to discuss his appeal options.  Reilly further testified that, when Mr. Crawshaw never came to visit him, he made several attempts to contact Mr. Crawshaw directly, but Mr. Crawshaw never returned his phone calls or contacted him by letter or email at the jail.  Reilly testified that the only response he ever received from Mr. Crawshaw was after Reilly contacted the State Bar of Texas and filed a grievance against Mr. Crawshaw, approximately ten months after Reilly received his sentence.   Reilly also testified that he contacted his friend Mr. Carrington and asked him to reach out to Mr. Crawshaw on his behalf.

There was also some testimony elicited at the hearing regarding Mr. Crawshaw's handling of the motion to suppress, for the purposes of explaining the possible basis for Mr. Reilly's direct appeal.  Reilly testified that Mr. Crawshaw failed to inform him of the Scheduling Order deadline for filing a motion to suppress; that Mr. Crawshaw's failed to file the motion to suppress by that deadline; that Mr. Crawshaw instead sought leave from the Court to file an untimely motion to suppress; and that the District Court never considered the merits of the motion to suppress because it denied the motion for leave.

Although Reilly expressed at the hearing that he wanted to appeal his case based on Mr. Crawshaw's ineffective of assistance surrounding the motion to suppress, Reilly conceded that he never affirmatively told Mr. Crawshaw he wanted to file an appeal in any of the communications or messages he left for Mr. Crawshaw.  Reilly explained in his testimony that he was not familiar with the rules governing the filing of a direct appeal and that he was relying on Mr. Crawshaw to explain the procedure, as well as the pros and cons of pursuing an appeal, before making a decision to do so.

Reilly admitted at the hearing that he signed a plea agreement; was aware of the appeal waiver contained therein; that Mr. Crawshaw had gone over the agreement "word for word"; that he signed each page of the agreement; and that Reilly had informed the Court that, at the time of the plea hearing, he was "very satisfied" with Mr. Crawshaw's representation. Yet, on redirect Reilly testified that he had not been aware of the late filing of the motion to suppress at the time he made that statement. Reilly also explained that Mr. Crawshaw had never thoroughly explained the meaning of the terms contained in the appeal waiver and any possible remaining bases for an appeal.

**B.      Bo Carrington**

Mr. Carrington confirmed that Reilly had contacted him sometime after he was sentenced to ask for his help in contacting Mr. Crawshaw regarding an appeal of his case and the return of some of his property. Mr. Carrington testified that he sent Mr. Crawshaw several text messages but received no response. Mr. Carrington also stated that he called Mr. Crawshaw's office multiple times but only reached him one time. According to Mr. Carrington, when Mr. Crawshaw realized who was calling, he told Mr. Carrington he would call him back later but never did. On cross-examination, however, Mr. Carrington conceded that when he briefly spoke with Mr. Crawshaw the only message he relayed was about the property Reilly wanted returned. Mr. Carrington testified that he never conveyed to Mr. Crawshaw that Reilly wished to file an appeal.

**C.      Attorney Adam Crawshaw**

Mr. Crawshaw testified that he usually contacts his clients following sentencing to make sure the case is closed. Mr. Crawshaw admitted that he had promised to visit Reilly after sentencing to bring him some documents to sign, but that he never contacted Reilly post-

sentencing or followed through with his intent to visit.  Mr. Crawshaw testified that he believed Reilly had given up his appellate rights but acknowledged that Reilly might have still had some right to appeal based on a claim of ineffective assistance of counsel.  Mr. Crawshaw testified that it is rare for an appellate court to consider claims of ineffective assistance on direct appeal, yet acknowledged that it does happen in some cases.  Mr. Crawshaw admitted, however, that he never discussed these issues with Reilly or informed Reilly of the time limits for filing an appeal or anything else about the appeal process after sentencing.  Mr. Crawshaw acknowledged that he had filed the motion to suppress after the pretrial motions deadline had already expired but testified that he could not recall if he told Reilly about the issue of timeliness, that leave of court was required to file the motion, or that the motion was never considered on its merits.

According to Mr. Crawshaw, he did not remember ever receiving any communication from Reilly after sentencing but recalled at least one phone call from Mr. Carrington.  Mr. Crawshaw testified that he remembers Mr. Carrington asking about the return of property but not conveying that Reilly wanted to appeal his case.  Mr. Crawshaw conceded that he might have forgotten to call Mr. Carrington back.

On cross-examination, Mr. Crawshaw confirmed that he had reviewed the terms of the plea agreement with Reilly but did not read it "paragraph by paragraph."  Mr. Crawshaw testified that he believes Reilly is a highly intelligent person who understood the terms of the agreement, including the section of the agreement limiting his right to appeal.  Mr. Crawshaw testified and stated in his affidavit filed in support of the Government's response to Petitioner's Section 2255 Petition that he spoke with Reilly about his right to appeal prior to his entering his plea of guilty. (Crawshaw Aff. [#73-1] at ¶ 5.)

Finally, Mr. Crawshaw testified that Reilly never affirmatively indicated that he wanted to file a direct appeal, nor did Mr. Crawshaw have any belief that Reilly wanted to file an appeal. Mr. Crawshaw testified that it was his belief following sentencing that, although he viewed Reilly's sentence as high, it was a below-guidelines sentence, and there was not any basis for Reilly to appeal, and he did not believe Reilly's constitutional rights were violated in any way.

### III.  Legal Standard

The Sixth Amendment guarantees "reasonably effective" legal assistance. *United States v. Cong Van Pham*, 722 F.3d 320, 323 (5th Cir. 2013).  For ineffective assistance of counsel to warrant habeas relief, Reilly must demonstrate that Mr. Crawshaw made errors so serious that he "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish that his trial counsel was constitutionally ineffective, Reilly must show (1) Mr. Crawshaw's performance was deficient in that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced his defense. *Id.* at 687–88.  A defendant suffers prejudice where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also United States v. Drones*, 218 F.3d 496, 500 (5th Cir. 2000).

Reilly's Petition argues that Mr. Crawshaw was constitutionally ineffective because he failed to consult with him regarding his right to a direct appeal.  Through his Petition, Reilly seeks the reinstatement of his time for an appeal so that he can bring an ineffective assistance of counsel claim based on Mr. Crawshaw's failure to file a timely motion to suppress.

A failure to consult with a defendant about a direct appeal does not automatically constitute constitutionally deficient performance. *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).  Counsel performs deficiently in failing to consult with a defendant about the right to an

appeal only when there is reason to think either that (1) a rational defendant would want to appeal (i.e., there is a nonfrivolous basis for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Id.* The Supreme Court has defined the term "consult" as having a specific meaning in this context: "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. The existence of a duty to consult is assessed in light of "all the information counsel knew or should have known." *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480). "Whether the conviction followed a trial or a guilty plea is 'highly relevant,' although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480).

Under *Strickland*, even if a defendant is able to demonstrate that an attorney's failure to consult about an appeal was constitutionally deficient, the defendant must still demonstrate prejudice, which in this context requires a showing that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. There is no requirement that a defendant show that "his hypothetical appeal might have had merit." *Id.* at 486. "This second-prong prejudice test 'applies even where a defendant has waived his right to direct appeal and collateral review.'" *Pham*, 722 F.3d at 324 (quoting *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007)).

## IV. Analysis

Based on the testimony before the Court, it is clear that Mr. Crawshaw failed to consult with Reilly in any meaningful way about filing an appeal. Mr. Crawshaw admitted that he promised Reilly that he would visit him after sentencing, but he failed to do so. Mr. Crawshaw

admitted that he never informed Reilly of the time limits associated with filing an appeal, any possible remaining avenues for appeal in light of the appeal waiver in his plea agreement, and the pros and cons of attempting to pursue any appeal.  Although the evidence establishes that Mr. Crawshaw discussed Reilly's right to appeal generally in the context of reviewing his plea agreement and the waiver regarding his appellate rights contained therein, Mr. Crawshaw conceded that he never spoke with Reilly to educate him about the appeals process after sentencing or made any effort to discern whether Reilly wanted to appeal.  In fact, Mr. Crawshaw admitted to forgetting to return at least one of the calls he received from Mr. Carrington about Reilly's case.

Reilly has failed to establish, however, that Mr. Crawshaw's failure to consult breached a constitutional duty.  First, the testimony before the Court establishes that Reilly never affirmatively indicated a desire to file an appeal.  Reilly admitted that he never communicated an interest in filing an appeal in any of the communications or messages he left for Mr. Crawshaw after sentencing.  Mr. Carrington testified the only thing he communicated to Mr. Crawshaw during his brief phone conversation was that Reilly was interested in the return of some of his property that was in Mr. Crawshaw's possession.  Mr. Crawshaw similarly testified that Reilly never indicated that he wanted to file a direct appeal.

Nor was there any evidence adduced at the hearing that might suggest that Reilly reasonably demonstrated his interest in appealing in some other and less direct manner, from which Mr. Crawshaw should have inferred an interest in appealing.  Some courts have found a constitutional duty to consult with a defendant, for example, where a defendant is visibly distraught over the sentence received and asks his attorney about the next step or what else can be done about his case.  *See Pham*, 722 F.3d at 325 (collecting cases).  The Fifth Circuit in *Pham*

9

concluded that the defendant, who spoke no English and had a terminally-ill wife and three children to care for, amply demonstrated his interest in pursuing additional proceedings where he was "visibly upset" upon receiving a sentence of 60 months and expressed that "he wanted to do something to get less time." *Id.* Reilly could point to no similar statements or conveyances here.

Nor has Reilly established that a rational defendant would have wanted to appeal, i.e., that he had a non-frivolous basis for an appeal. "As a general rule, claims of inadequate representation which have not been raised before the district court cannot be raised on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegation." *United States v. Brown*, 591 F.2d 307, 310 (5th Cir. 1979). Such claims are instead more appropriately addressed through petitions to vacate under Section 2255. *Id.* There are, however, narrow instances in which the record is adequate for the court to assess the merits of an ineffectiveness of counsel challenge on direct appeal. *Id.* The Fifth Circuit found one such circumstances where a defendant sent a letter to the court after trial but before sentencing complaining about counsel's deficient performance and the trial court raised the letter to the attention of counsel and provided an opportunity for defense counsel to respond to the allegations. *United States v. Phillips*, 664 F.2d 971, 1040 (5th Cir. 1981). Reilly has not demonstrated that his case is one of those rare cases in which the record was sufficiently developed on his claim of ineffective assistance such that a direct appeal of an ineffective assistance claim, as opposed to raising the claim in his Section 2255 petition (as he has), would have been non-frivolous.

Finally, even if Reilly could demonstrate that he communicated a desire to appeal to Mr. Crawshaw or that he had a non-frivolous basis for an appeal, he has also failed to demonstrate the required prejudice under *Strickland*—that, but for counsel's failure to consult with him

regarding his appellate rights, he would have timely appealed. *See Flores-Ortega*, 528 U.S. at 484. First, Reilly testified that he knew he had waived his right to appeal in almost all circumstances when he knowingly and voluntarily entered his plea of guilty before this Court. At his re-arraignment and plea hearing, Reilly was specifically admonished that if he pleaded guilty, he would be giving up his right to appeal his sentence as well as the right to contest his sentence in most types of postconviction proceedings. The Fifth Circuit has found such admonishments to be relevant under the second *Strickland* prong in determining prejudice. *United States v. Kayode*, 777 F.3d 719, 728–29 (5th Cir. 2014) (finding that district court's admonishments about consequences of plea agreement weighed against finding prejudice with respect to ineffective assistance claim). Reilly also waited almost a full year to file his Section 2255 petition, a fact that the Fifth Circuit has also found to indicate the unlikeliness of filing a timely appeal but for any deficient performance by counsel. *United States v. Berjarano*, 751 F.3d 280, 287 (5th Cir. 2014). Finally, Reilly received a sentence below the advisory guidelines on each count, to run concurrently as opposed to consecutively, a presumptively valid sentence.

The Firth Circuit recently denied a Section 2255 petition based on counsel's failure to consult about an appeal in similar circumstances. *See United States v. Johnson*, 792 Fed. App'x 339 (5th Cir. 2020). The defendant in *Johnson* had, like Reilly, pleaded guilty; received a presumptively reasonable, within-guidelines sentence; and never requested her attorney to file an appeal. *Id.* at 340. Importantly, the Fifth Circuit emphasized that a defendant's testimony that he would have appealed if consulted, standing alone, does not establish prejudice. *Id.* (citing *Bejarano*, 751 F.3d at 286). In light of all of these circumstances, the Fifth Circuit held that the defendant had failed to establish the requisite prejudice on her ineffective assistance of counsel claim. *Id.* The same result is compelled here.

## V.  Conclusion and Recommendation

Having considered Reilly's Petition, the Government's Response, the testimony of Reilly, Mr. Carrington, and Attorney Crawshaw at the hearing, the argument of counsel, and the parties' post-hearing briefing, the undersigned recommends that Petitioner Christopher Alexander Reilly's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [#67] be **DENIED** with respect to Reilly's claim that his attorney was constitutionally deficient in failing to consult with him about an appeal.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain

error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

      SIGNED this 30th day of October, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE